******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LEE DEER ET AL. *v.* NATIONAL GENERAL INSURANCE COMPANY ET AL.
## (SC 21045)

Mullins, C. J., and McDonald, D'Auria, Ecker, Alexander and Dannehy, Js.

### *Syllabus*

The plaintiffs purchased a homeowners insurance policy with a term of one year that was underwritten by an insurance company, N. Co. The plaintiffs procured the policy with the assistance of the defendant insurance brokers, T and his insurance brokerage firm, T Co. Shortly after the policy was issued, a representative of N Co. inspected the plaintiffs' home and found a defect in the exterior siding. N Co. then sent an email to T Co. informing T Co. of this finding and indicating that the plaintiffs were required to repair the defect and to provide notice of the repair no later than three months before the policy was to renew. The parties disputed whether T Co. conveyed this information to the plaintiffs. After not receiving notice of repair by the deadline, N Co. sent another email to T Co., informing it that N Co. had not received notice of repair and that the plaintiffs' policy would not be renewed if notice of repair was not received by the policy expiration date. Approximately four weeks later, and two months before the policy expiration date, N Co. sent a nonrenewal notice to the plaintiffs by certified mail, which the plaintiffs claimed they never received. Ultimately, N Co. never received notice of repair, and the policy did not renew. Shortly after expiration of the policy, the plaintiffs' home was destroyed as a result of an accidental fire. Subsequently, the plaintiffs sought damages from, among others, the defendants, claiming, inter alia, that the defendants had a duty to notify the plaintiffs of communications from N Co., including a nonrenewal notification, but negligently failed to do so. The trial court granted the defendants' motion for summary judgment and rendered judgment thereon, and the plaintiffs appealed to the Appellate Court, which affirmed the trial court's judgment. On the granting of certification, the plaintiffs appealed to this court. *Held*:

The Appellate Court correctly concluded that the defendants did not owe the plaintiffs a duty to provide them with notice of N Co.'s impending nonrenewal of their homeowners insurance policy under the circumstances of this case, and, accordingly, this court affirmed the Appellate Court's judgment.

The general rule is that an insurance broker owes no legal duty to the insured after the broker has successfully procured the requested insurance policy, and a broker is entitled to rely on the insurer to adhere to its statutory and contractual obligations to provide notice of nonrenewal to the insured.

An exception to the general rule arises, however, when a broker agrees or gives some affirmative assurance that it will assist in the renewal of an insurance policy for the insured.

In the present case, the agency relationship between the plaintiffs and the defendants terminated after the defendants procured the plaintiffs' policy, as there was no evidence that the defendants had agreed or represented that they would assist in maintaining or renewing the plaintiffs' insurance coverage after the issuance of the policy, and there was no evidence that the defendants had continued to act on the plaintiffs' behalf or affirmatively sought to extend the plaintiffs' coverage by collecting the necessary information to secure a renewal of the plaintiffs' policy.

Moreover, the plaintiffs could not prevail on their claim that a duty should be imposed on the defendants in view of the long-standing, continued, and ongoing relationship between the plaintiffs and the defendants because, although the plaintiffs did have a long-standing relationship with the defendants for many years, that relationship was interrupted for two years prior to the procurement of the policy at issue, as the plaintiffs had utilized another insurance broker during that timeframe, and, in any event, such a long-standing relationship, by itself, is insufficient to create a duty in the absence of evidence that the defendants, through their conduct or communications, had undertaken an additional duty to assist the plaintiffs with their renewals.

(*Two justices dissenting in one opinion*)

Argued April 14—officially released September 9, 2025

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of New London and transferred to the judicial district of Hartford, Complex Litigation Docket, where the court, *Noble, J.*, granted the motions for summary judgment filed by the defendant The Trahan Agency, Inc., et al., denied the plaintiffs' motion for summary judgment and rendered judgment thereon, from which the plaintiffs appealed to the Appellate Court, *Bright, C. J.*, and *Cradle* and *Palmer, Js.*, which affirmed the trial court's judgment, and the plaintiffs, on the granting of certification, appealed to this court. *Affirmed.*

*Joseph M. Barnes*, with whom, on the brief, were *Robert I. Reardon*, *Jr.*, and *Kelly E. Reardon*, for the appellants (plaintiffs).

*Cara D. Joyce*, for the appellees (defendant The Trahan Agency, Inc., et al.).

*Opinion*

D'AURIA, J. The primary issue in this certified appeal is whether an insurance broker has a duty to inform its clients that their homeowners insurance provider intends not to renew their insurance policy. The plaintiffs, Lee Deer and Keleen Deer, appeal from the Appellate Court's judgment affirming the trial court's judgments in favor of the defendants[1] Kevin Trahan and his insurance brokerage firm, The Trahan Agency, Inc.[2] The plaintiffs claim that the Appellate Court incorrectly concluded that their long-standing and special relationship with the defendants failed to create a legal duty that required the defendants to provide them with notice of the impending nonrenewal in this case. We disagree and affirm the judgment of the Appellate Court.

The Appellate Court aptly recited the facts and procedural history needed to resolve this appeal; see *Deer* v. *National General Ins. Co.*, 225 Conn. App. 656, 317

[1] Although National General Insurance Company and Century National Insurance Company were also named as defendants, any claims pertaining to them are not at issue in this appeal. Therefore, we refer to Kevin Trahan and The Trahan Agency, Inc., as the defendants.

[2] "An insurance agent is a person expressly or impliedly authorized to represent an insurance company in its dealings with third persons. . . . An insurance broker is one who acts as a middleman between the insured and insurer and who solicits insurance from the public under no employment from any special company and who either places an order for insurance with a company selected by the insured, or, in the absence of such selection, with a company the broker selects." (Citations omitted; internal quotation marks omitted.) *Lewis* v. *Michigan Millers Mutual Ins. Co.*, 154 Conn. 660, 664, 228 A.2d 803 (1967). As the parties have framed the issue, our opinion focuses on the duties the defendants owed to the plaintiffs as their insurance broker.

A.3d 19 (2024); which we summarize along with other undisputed facts in the record. From 2001 through 2017, the defendants were the plaintiffs' insurance brokers and had procured for the plaintiffs a homeowners insurance policy from the Allstate Insurance Company (Allstate), which Allstate renewed fifteen times during that period. From March, 2017, through June, 2019, the plaintiffs used a different insurance brokerage firm to procure their homeowners insurance.

In 2019, the plaintiffs restarted their relationship with the defendants, procuring a homeowners insurance policy that was underwritten by the Century-National Insurance Company (Century-National) for their home in Waterford. The defendants procured the policy through Century-National because Allstate no longer provided homeowners insurance in Connecticut. The policy was effective from June 27, 2019, until June 27, 2020, and provided $361,442 of coverage for the home. Shortly after the policy was issued, a Century-National representative inspected the plaintiffs' home and noticed that a part of the exterior siding was missing.

On July 24, 2019, a Century-National representative sent an email to the defendants' office manager, attaching the inspection results and directing that the plaintiffs needed to repair their missing siding. The email specifically stated: "Please discuss the situation with your insured, as repairs are required as a condition of continued coverage," and required that proof of repair be submitted no later than March 27, 2020.[3] On March 27, 2020, the Century-National representative, in a follow-up email, stated: "We have not received a response regarding the . . . request for repairs . . . [namely]

---

[3] We disagree with the dissent's characterization of this email as unequivocally manifesting the insurer's intent to "cancel" the existing policy. Part I of the dissenting opinion. The plaintiffs do not make this argument, and, in fact, Century-National did not cancel the policy but instead did not renew it once it had lapsed.

[m]issing siding on the exterior walls. Due to not receiving a response the policy has been set to nonrenew. Please submit proof of repairs . . . by the policy expiration date." The parties dispute whether the plaintiffs received any communication from the defendants about the inspection, the necessary repairs, or the risk of nonrenewal in the days leading up to, and after, the expiration of the policy.

On April 19, 2020, Century-National sent a nonrenewal notice to the plaintiffs by certified mail. The notice provided that "[t]his insurance is no longer acceptable due to the inspection report . . . [that] revealed conditions which increase the exposure to loss and prevent your home from meeting underwriting guidelines," and that Century-National had not received proof of compliance with the prior written requests to repair the missing siding. The notice further stated that, "[i]n order to have this notice rescinded we must receive proof that repairs have been completed to the company's satisfaction prior to the [nonrenewal] date" of June 27, 2020. The United States Postal Service (postal service) tried to deliver the notice on April 23, 2020, but left a notice of its attempted delivery, as there was no authorized recipient available. The postal service tried two more times to deliver the certified mail to the plaintiffs' home. After the third unsuccessful attempt, the postal service declared the notice unclaimed and returned it to Century-National on May 6, 2020. The plaintiffs denied receiving the notice of nonrenewal.[4]

Following the nonrenewal notice, the insurance policy expired on June 27, 2020, and Century-National did not renew the plaintiffs' homeowners insurance policy. Weeks later, the plaintiffs' home was destroyed in an

---

[4] Lee Deer testified at his deposition that he regularly had problems receiving mail because his mailbox was not in the same location as his driveway. The postal service was aware of this confusion and had complained to him about it in the past.

accidental fire. The plaintiffs made a claim under the policy, but Century-National denied their claim because the home was not insured at the time of the loss.

The plaintiffs sued the defendants and Century-National for damages stemming from Century-National's decision not to provide coverage for the plaintiffs' destroyed home. The plaintiffs asserted a variety of civil causes of action against the defendants and Century-National,[5] including a common-law negligence claim against the defendants, alleging that they negligently did not inform the plaintiffs that Century-National intended not to renew their policy. The plaintiffs alleged that the defendants had acted as their insurance brokers for several years and that they relied on the defendants to verify that their insurance policies were correct, active, and up to date. The plaintiffs alleged that the defendants breached their duty as their brokers to exercise reasonable diligence in notifying them of Century-National's intention not to renew their policy.

The defendants moved to strike the plaintiffs' negligence claim, arguing that they had no common-law duty to inform the plaintiffs of Century-National's intention not to renew their homeowners insurance policy. The trial court struck the plaintiffs' negligence claim, relying on the general rule in Connecticut that, absent excep-

---

[5] In a separate action, the plaintiffs claimed that the defendants' conduct had violated the Connecticut Unfair Insurance Practices Act, General Statutes § 38a-815 et seq., and the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The plaintiffs also sued Century-National, alleging that it had failed to comply with the notice requirements of General Statutes § 38a-323 and the notice provisions of the homeowners insurance policy. The trial court rendered judgment in favor of Century-National and the defendants with respect to these claims, and the Appellate Court affirmed. We denied the plaintiffs' petitions for certification to appeal as to those claims. See *Deer* v. *Trahan Agency, Inc.*, 350 Conn. 904, 323 A.3d 345 (2024); *Deer* v. *National General Ins. Co.*, 350 Conn. 903, 323 A.3d 342 (2004). Our opinion, therefore, is limited to the plaintiffs' common-law negligence claim.

tional circumstances, a broker becomes an agent of its client when procuring insurance for that client but that the agency relationship ends once the insurance policy is procured. The trial court reasoned that, after the insurance policy successfully has been procured, a broker has no duty to its client to provide an insurance company's notice of nonrenewal. The trial court held that the plaintiffs' allegations—regarding the long-term relationship with the defendants and their reliance on the defendants to ensure that their insurance policies were active and up to date—were routine and therefore did not establish a special circumstance calling for the imposition of a duty.

The plaintiffs filed a substitute complaint in which they reasserted their negligence claim. The plaintiffs alleged in more detail that the defendants had procured for them insurance policies for more than two decades. The plaintiffs alleged that they had built a relationship of trust with the defendants, who would inform them about their insurance and changes to their policies. They alleged that these circumstances created a legal duty requiring the defendants to promptly notify the plaintiffs of communications from an insurance company, including nonrenewal notifications.

The parties filed motions for summary judgment on the plaintiffs' negligence claim. The defendants contended that they were entitled to judgment as a matter of law, again arguing that they had no duty under Connecticut law to notify the plaintiffs of the impending nonrenewal of their policy. The plaintiffs maintained that a duty was created by virtue of the relationship between them and the defendants. Both parties submitted various exhibits supporting their positions. The trial court adopted the analysis it had employed in its prior decision striking the plaintiffs' negligence claim and granted the defendants' motion for summary judgment.

The plaintiffs appealed to the Appellate Court, which affirmed the trial court's judgment. See *Deer* v. *National General Ins. Co.*, supra, 225 Conn. App. 701. The Appellate Court recited the general rule that, absent exceptional circumstances, an insurance broker has no continuing legal duty after the procurement of coverage to do anything that affects the client. See id., 690. The Appellate Court held that the plaintiffs' summary judgment exhibits did not raise a genuine issue of material fact as to the existence of exceptional circumstances extending the agency relationship between the parties after the procurement of the policy on June 27, 2019. See id., 694. The Appellate Court also specifically noted that there was no evidence that the plaintiffs had asked, the defendants had represented, or the parties had ever discussed that the defendants would procure for the plaintiffs insurance coverage for a period of time beyond the expiration of the policy on June 27, 2020. See id. This certified appeal followed.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . Contained within the first element, duty, there are two distinct considerations. . . . First, it is necessary to determine the existence of a duty, and [second], if one is found, it is necessary to evaluate the scope of that duty. . . . We sometimes refer to the scope of that duty as the requisite standard of care." (Internal quotation marks omitted.) *Osborn* v. *Waterbury*, 333 Conn. 816, 825, 220 A.3d 1 (2019). "[T]he existence of a legal duty is a question of law over which we exercise plenary review." (Internal quotation marks omitted.) *Gonzalez* v. *O & G Industries, Inc.*, 341 Conn. 644, 680, 267 A.3d 766 (2021); see also *Iacurci* v. *Sax*, 313 Conn. 786, 796, 99 A.3d 1145 (2014) (existence of duty often turns on unique facts presented in record but fact driven nature of question

of law does not transform legal question into factual question).

"When procuring insurance for a person . . . a broker becomes the agent of that person for that purpose." *Lewis* v. *Michigan Millers Mutual Ins. Co.*, 154 Conn. 660, 664, 228 A.2d 803 (1967). An insurance broker "owes a duty to his principal to exercise reasonable skill, care, and diligence in effecting the insurance, and any negligence or other breach of duty on his part which defeats the insurance which he undertakes to secure will render him liable to his principal for the resulting loss. . . . Where he undertakes to procure a policy affording protection against a designated risk, the law imposes upon him an obligation to perform with reasonable care the duty he has assumed, and he may be held liable for loss properly attributable to his default." (Citation omitted.) *Ursini* v. *Goldman*, 118 Conn. 554, 559, 173 A. 789 (1934). "Once that purpose is accomplished, however, and the insurance is procured, the agency relationship between the insured and the broker terminates, and the broker is without any authority to do anything which further affects the insured unless expressly or impliedly authorized by the insured to do so." *Lewis* v. *Michigan Millers Mutual Ins. Co.*, supra, 664; see also 3 S. Plitt et al., Couch on Insurance (3d Ed. Rev. 2011) § 44:36, pp. 44-50 through 44-51 ("An agency for the insured may terminate by the completion of the act that the agency was created to accomplish. For example, the agency of a broker employed to procure a particular insurance ceases when that insurance has been procured."); B. Weimer et al., Law of Commercial Insurance Agents and Brokers (2007) § 5:3 [D], p. 5-23 ("[t]he existence of a broker-client relationship, by itself, does not establish that the broker owes affirmative duties").

Accordingly, the established general rule is that an insurance broker owes no legal duty to the insured after

the broker has successfully procured the requested policy. See *Lewis* v. *Michigan Millers Mutual Ins. Co.*, supra, 154 Conn. 664; *Rovella* v. *Standard Accident Ins. Co.*, 121 Conn. 134, 138, 183 A. 377 (1936); *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, 109 Conn. App. 560, 570, 952 A.2d 818, cert. denied, 289 Conn. 940, 959 A.2d 1007 (2008); see also *Reyes* v. *Nautilus Ins. Co.*, Docket No. CV-10-6013254-S, 2012 WL 1004302, *13 (Conn. Super. March 6, 2012) (citing Superior Court decisions holding that brokers have no duty to insured after insurer issues policy). "An insurance policy that renews or replaces a prior policy is a separate and distinct contract, such that an agreement by the [broker] to procure a new policy is a prerequisite to liability. Absent the broker's agreement to arrange the renewal or replacement of a policy, the broker has no duty to continue coverage for the insured. . . . If the insured's policy expires or is cancelled and a later loss is thus uninsured, the . . . broker who procured the policy is in no way liable." (Footnotes omitted.) 1 J. Thomas & F. Mootz III, New Appleman on Insurance Law Library Edition (2011) § 2.05 [4], pp. 2-47 through 2-48; see, e.g., *Faulkner* v. *Gilmore*, 251 Ill. App. 3d 34, 38, 621 N.E.2d 908 (1993) (broker no longer owes duty once limited purpose of broker's agency is accomplished); *Hecker* v. *Missouri Property Ins. Placement Facility*, 891 S.W.2d 813, 817 (Mo. 1995) (insurance agent owed no duty to insureds after informing them he would not submit application to renew policy); *Williams* v. *Prudential Financial, Inc.*, 138 App. Div. 3d 643, 644, 31 N.Y.S.3d 34 (broker had no duty in connection with policy renewal absent agreement to keep policy in force), appeal denied, 28 N.Y.3d 911, 69 N.E.3d 1023, 47 N.Y.S.3d 227 (2016); see also *Admiral Ins. Co.* v. *Cresent Hills Apartments*, 328 F.3d 1310, 1312 (11th Cir. 2003) (insurance agency had no duty to notify insured of insurer's attempt to cancel policy).

The primary rationale supporting this general rule is that it is the insurer's statutory and contractual obligation to notify an insured that the insurer intends not to renew the policy it had issued. Many states, including Connecticut, have statutes mandating that an insurer provide notice to the insured of its intention not to renew a policy. See footnote 5 of this opinion; see also General Statutes § 38a-323 (a) (1); *Pacific Rim Mechanical Contractors, Inc.* v. *Aon Risk Ins. Services West, Inc.*, 203 Cal. App. 4th 1278, 1284, 138 Cal. Rptr. 3d 294 (2012); *Kotlar* v. *Hartford Fire Ins. Co.*, 83 Cal. App. 4th 1116, 1123, 100 Cal. Rptr. 2d 246 (2000), review denied, California Supreme Court, Docket No. S092700 (January 24, 2001); *Collins* v. *State Farm Ins. Co.*, 160 So. 3d 987, 994 (La. App. 2015). Additionally, insurance policies, like the one at issue, often contain notice provisions requiring insurers to inform the insureds that their coverage will no longer be effective. See footnote 5 of this opinion; see also *Westmoreland* v. *General Accident Fire & Life Assurance Corp., Ltd.*, 144 Conn. 265, 270, 129 A.2d 623 (1957); *Slovak* v. *Adams*, 141 Ohio App. 3d 838, 845, 753 N.E.2d 910 (2001). Ordinarily, a broker is justified in relying on the insurer, following the insurer's statutory and contractual obligations, to provide notice to the insured. See, e.g., *Rovella* v. *Standard Accident Ins. Co.*, supra, 121 Conn. 138; *Wood* v. *State Farm Fire & Casualty Co.*, Docket Nos. 2019-CA-000462-MR and 2019-CA-000463-MR, 2020 WL 1898401, *5 (Ky. App. April 17, 2020); *Isaacson* v. *DeMartin Agency, Inc.*, 77 Wn. App. 875, 881, 893 P.2d 1123 (1995). Because these notice provisions require an insurer to provide notice to the *insured,* not the insured's broker of record, in some instances, the broker might lack information about the policy to communicate with the insured.

An exception to this general rule arises when a broker agrees, or gives some affirmative assurance, that it will assist in the renewal of an insurance policy for the

insured.[6] See, e.g., *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, supra, 109 Conn. App. 568–69; see also *Cronin* v. *Washington National Ins. Co.*, 980 F.2d 663, 669 (11th Cir. 1993); *Indiana Restorative Dentistry, P.C.* v. *Laven Ins. Agency, Inc.*, 27 N.E.3d 260, 266–67 (Ind. 2015); *Trinity Universal Ins. Co.* v. *Burnette*, 560 S.W.2d 440, 444 (Tex. Civ. App. 1977). "Insurance policies expire by their own terms and must be renewed. Generally, the insurer deals directly with the insured to renew coverage, but sometimes the broker who placed the coverage is involved in the renewal process." 1 J. Thomas & F. Mootz III, supra, § 2.05 [4], p. 2-47. Although a broker does not have to assist with a renewal, "once the [broker] undertakes this task, the [broker] must exercise the level of skill, care and diligence appropriate under the circumstances for one in the field." *Golden Rule Ins. Corp.* v. *Greenfield*, 786 F. Supp. 914, 916 (D. Colo. 1992); see also *Holborn Corp.* v. *Sawgrass Mutual Ins. Co.*, 304 F. Supp. 3d 392, 405 (S.D.N.Y. 2018) (exception for special relationship between broker and customer is narrow so as to not swallow general rule).

By accepting the obligation to maintain insurance coverage or to renew a policy, a broker has "the duty to notify the applicant if the insurer declines to continue [to insure] the risk, so the applicant may not be lulled into a feeling of security or put to prejudicial delay in seeking protections elsewhere." (Internal quotation marks omitted.) *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, supra, 109 Conn. App. 566;[7]

---

[6] The parties may expressly contract for additional monitoring or advising services; see generally B. Weimer et al., supra, § 5:3, pp. 5-13 through 5-45; or the insured can provide a broker with compensation that is greater than an ordinary commission for those services. See, e.g., *Sawyer* v. *Rutecki*, 92 App. Div. 3d 1237, 1237, 937 N.Y.S.2d 811, appeal denied, 19 N.Y.3d 804, 970 N.E.2d 431, 947 N.Y.S.2d 408 (2012). Neither of these circumstances is at issue in this case.

[7] The plaintiffs and the dissent take this quotation from *Precision Mechanical Services, Inc.*, out of context. The full quotation, which is from *Lazzara* v. *Howard A. Esser, Inc.*, supra, 802 F.2d 266, provides: "[*I*]*n the case of a*

see also *Lazzara* v. *Howard A. Esser, Inc.*, 802 F.2d 260, 266 (7th Cir. 1986); B. Weimer et al., supra, § 5:3 [D], p. 5-19 ("[a] broker must give the insured prompt notice if the correct coverage is not obtained, and take appropriate measures to protect the insured's interests in such a situation"). To decide whether a broker has undertaken a duty to assist with renewal, a court must consider the conduct of and the communications between the parties and, more specifically, "the extent to which they indicate that the [broker] has acknowledged an obligation to secure a policy." (Internal quotation marks omitted.) *Barnett* v. *Security Ins. Co. of Hartford*, 84 N.C. App. 376, 378, 352 S.E.2d 855 (1987); see also *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, supra, 570.

Under the present circumstances, we agree with the Appellate Court that the agency relationship between the parties terminated after the defendants had procured the plaintiffs' insurance policy in June, 2019. The defendants owed no duty to inform the plaintiffs of the information they had received regarding the renewal because the plaintiffs did not agree to maintain or renew

*broker who has agreed to seek renewal of a policy*, it is immaterial whether the insurer would renew the policy. Inherent in the *obligation to seek continuation of an insurance policy* is the duty to notify the applicant if the insurer declines to continue [to insure] the risk, so the applicant may not be lulled into a feeling of security or put to prejudicial delay in seeking protection elsewhere." (Emphasis added; internal quotation marks omitted.) Id.; see *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, supra, 109 Conn. App. 566. Thus, *Precision Mechanical Services, Inc.*, does not stand for the proposition that a broker always and under all circumstances has a duty to notify an insured of an insurer's intention not to renew a policy. Instead, that duty arises when a broker extends his agency relationship and accepts an obligation to ensure continued coverage. Moreover, the notice provided by the insurer to the defendants indicated its intent to offer continued coverage, not to cancel the policy. See footnote 2 of this opinion. On this record, which we read in the light most favorable to the plaintiffs, we cannot conclude that the defendants undertook the obligation to extend their agency so as to come within the exception to the general rule that their duty terminated along with its agency.

the plaintiffs' insurance coverage. It is undisputed that the defendants successfully procured the plaintiffs homeowners insurance, effective from June 27, 2019, until June 27, 2020. The plaintiffs provided no evidence in opposition to summary judgment to show that the defendants had agreed or represented that they would assist in maintaining or renewing that coverage one year later. There was no evidence that the parties met, discussed, or otherwise corresponded during the policy year with respect to the policy's renewal. Indeed, Lee Deer testified that he could not recall any conversations with the defendants during 2019 or 2020, and he specifically denied that the defendants had left him several voicemails prior to the nonrenewal or had any conversations with him about the potential nonrenewal. Keleen Deer testified that she had not spoken with any of the defendants' employees since 2019 and did not contact them after they had procured the Century-National policy in June, 2019.

Moreover, there was no evidence that the defendants continued to act on the plaintiffs' behalf or affirmatively sought to extend the plaintiffs' coverage by collecting the necessary information to obtain a renewal. Lee Deer testified that he did not know whether there was any specific action that he or his wife had asked the defendants to take. There also was no evidence that the defendants had informed the plaintiffs that they would assist with the renewal, that they had provided the plaintiffs with renewal quotes, or that the defendants had assured them that their policy would renew or remain in effect beyond its effective date. In short, the plaintiffs direct us to no evidence showing that the defendants specifically agreed or indicated that they would renew the 2019 policy. See, e.g., *Collegiate Mfg. Co.* v. *McDowell's Agency, Inc.*, 200 N.W.2d 854, 858 (Iowa 1972) (plaintiff's subjective expectations are insufficient to create duty absent

express or implied agreement to assume duty beyond ordinary relationship).

The plaintiffs nevertheless contend that the defendants undertook a duty by trying, unsuccessfully, to inform them of Century-National's intention not to renew the policy several days before, and several days after, the policy's expiration. But even if the defendants in fact attempted to inform the plaintiffs of Century-National's intent by leaving them voicemails, which the plaintiffs adamantly deny occurred, that attempted notification falls well short of the defendants' agreement to ensure continued insurance coverage. See, e.g., *Harris* v. *Albrecht*, 86 P.3d 728, 733 (Utah 2004) (no duty for broker to procure coverage despite preliminary discussion about plaintiff's need for insurance); see also *Alford* v. *Tudor Hall & Associates, Inc.*, 75 N.C. App. 279, 283, 330 S.E.2d 830 (same), review denied, 315 N.C. 182, 337 S.E.2d 855 (1985). The plaintiffs further argue that Century-National perceived an existing, ongoing relationship between the plaintiffs and the defendants because it referred to the plaintiffs as the defendants' "insured[s]" in its July 24, 2019 email about the inspection results. But the phrasing Century-National used in its correspondence is insufficient to revive the terminated agency relationship between the defendants and the plaintiffs. The focus of the duty inquiry is on the conduct and communications between the parties; see, e.g., *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, supra, 109 Conn. App. 570; not on the perspective of a third party who lacks any knowledge of the scope of that relationship.

The plaintiffs additionally maintain that a duty should be imposed on the defendants as a result of the longstanding, continued, and ongoing relationship between the parties.[8] The plaintiffs contend that the defendants

---

[8] The plaintiffs further rely on their standard of care expert's opinion that all brokers have a duty to inform their insureds of a nonrenewal. We agree with the Appellate Court that this expert opinion does not constitute evi-

had procured insurance policies for them from 2001 through 2020, and that this series of actions created a duty to advise them of known problems with or lapses in continued insurance coverage. The problem for the plaintiffs is that their relationship with the defendants was no longer long-standing, continued, or ongoing. It is undisputed that the defendants had procured insurance policies for the defendants for sixteen years between 2001 and 2017. It also is undisputed, however, that the plaintiffs ended that relationship in March, 2017, when they decided to use another insurance brokerage firm to procure insurance for them. The plaintiffs restarted their relationship with the defendants, asking that they procure a *new* homeowners insurance policy in June, 2019. But cf. *101 Ocean Blvd.*, *LLC* v. *Foy Ins. Group*, *Inc.*, 174 N.H. 130, 134, 261 A.3d 250 (2021) (jury properly found extended agency relationship when broker provided unsolicited advice about amounts and types of coverage to insured for more than nine uninterrupted years). By that time, the defendants were no longer contractually obligated to Allstate to sell only Allstate homeowners insurance policies, and the defendants were still only in their first year of the new relationship with the plaintiffs after procuring for them an insurance policy with Century-National.

Even if the parties had a continued and long-standing relationship, the length of that relationship alone is insufficient to create an extended agency relationship. Critically, in cases finding the existence of an extended agency relationship, the record contains evidence that the broker consistently had participated in the renewal process or had taken some affirmative action with respect to renewal of the policy it had procured. See,

dence that can impose a legal duty on the defendants. See *Deer* v. *National General Ins. Co*., supra, 225 Conn. App. 691 n.22. Instead, as we explain, the inquiry of whether a broker has a duty in this context is contingent on the specific conduct of and communications between the parties.

e.g., *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, supra, 109 Conn. App. 567, 570 (broker continued to act on insured's behalf after issuance of policy by seeking amendment and discussing renewal with insured); *Indiana Restorative Dentistry, P.C.* v. *Laven Ins. Agency, Inc.*, supra, 27 N.E.3d 266 (broker met with insured three to four times per year and completed same "annual policy renewal ritual," including soliciting information for renewal application); *McCue* v. *Prudential Ins. Co. of America*, 371 Mass. 659, 661–62, 358 N.E.2d 799 (1976) (continuing relationship existed for twenty-eight years during which agents made monthly visits to plaintiffs to attend to their insurance needs); *Martinonis* v. *Utica National Ins. Group*, 65 Mass. App. 418, 420, 422, 840 N.E.2d 994 (2006) (broker assumed additional duties during nearly decade long relationship by regularly providing insured with advice); *Trinity Universal Ins. Co.* v. *Burnette*, supra, 560 S.W.2d 442–43 (brokerage firm always renewed policies for plaintiffs or notified them when policies were not renewed); see also *Cronin* v. *Washington National Ins. Co.*, supra, 980 F.2d 669 (broker assumed duty by contacting insured before each of her other three policies expired, and had solicited her renewal application).

In the present case, although the defendants had procured for the plaintiffs an Allstate homeowners insurance policy in 2001, the plaintiffs provided no evidence in opposition to summary judgment to demonstrate that the defendants had assisted them with the renewal process between 2001 and 2017, or that the defendants previously had communicated renewal information to the plaintiffs. As we have explained, to satisfy the exception to the general rule that no duty exists, a plaintiff must discover and present evidence that a broker has accepted the obligation to maintain insurance coverage or to renew a policy. Thus, even if the plaintiffs had

a continuous and ongoing relationship, they failed to present any evidence to show that the defendants, through their conduct or with communications by the plaintiffs, had undertaken an additional duty between 2001 and 2017 to assist them with the renewals. See, e.g., *Peerless Ins. Co.* v. *Gonzalez*, 241 Conn. 476, 488, 697 A.2d 680 (1997) (summary judgment properly rendered for insurer because defendant failed to present evidence as to insurer's past practice). Moreover, although the defendants had been contractually obligated to sell only Allstate homeowners insurance policies when they procured the plaintiffs' 2001 policy, the defendants were procuring policies from different homeowners insurance providers when the plaintiffs returned in 2019. The imposition of a duty based solely on the length of a broker-insured relationship, without evidence regarding the nature of that relationship, is unwarranted. See, e.g., *Lisa's Style Shop, Inc.* v. *Hagen Ins. Agency, Inc.*, 181 Wis. 2d 565, 570, 573, 511 N.W.2d 849 (1994) (broker owed no duty because, although six year relationship was long, parties rarely spoke and insured did not seek broker's assistance); see also *BioChemics, Inc.* v. *AXIS Reinsurance Co.*, 277 F. Supp. 3d 251, 256 (D. Mass. 2017) (no duty when broker worked annually to obtain insurance and never was asked to provide, or actually provided, insurance advice). In sum, we are not persuaded by the plaintiffs' attempt under these circumstances to impose a duty on the defendants to inform the plaintiffs of an impending nonrenewal.

We are sympathetic to the plaintiffs' situation, having lost their home without insurance coverage to replace it. "While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. . . . In

every case in which a defendant's negligent conduct may be remotely related to a plaintiff's harm, the courts must draw a line, beyond which the law will not impose legal liability." (Citation omitted; internal quotation marks omitted.) *Lawrence* v. *O & G Industries, Inc.*, 319 Conn. 641, 666–67, 126 A.3d 569 (2015); see id., 667 (construction companies owed no duty to workers employed on job site who suffered economic harm); see also *Karas* v. *Liberty Ins. Corp.*, 335 Conn. 62, 109, 228 A.3d 1012 (2019) (recognizing that its holding would result in lack of insurance coverage for plaintiffs and many homeowners statewide). As it concerns the issue of nonrenewing policies, the legislature has seen fit to limit the obligation (and therefore the liability) of the insurance companies themselves, which only have to send notice of nonrenewal and do not need to prove actual receipt or actual notice. See General Statutes § 38a-323 (a) (1). The legislature could, of course, impose such a duty on brokers to provide notice of an insurer's intention not to renew a policy if, in the legislature's judgment, such a duty is warranted. In the absence of legislative action, however, we decline to create a new legal duty.

The dissent opposes our resolution of this case by challenging the basis of the general rule that an agency relationship terminates once its purpose is accomplished, which is supported by more than 100 years of bedrock agency principles. See, e.g., *Cheshire Brass Co.* v. *Wilson*, 86 Conn. 551, 557–58, 86 A. 26 (1913). The plaintiffs do not ask us to deviate from traditional agency principles, and they rely on the agency relationship between the parties to support their theory of liability. This case, as it did before the trial court and the Appellate Court, turns on the application of the *exception* to that general rule under the present circumstances. This narrow exception has been incorporated into the common law, in this state and across the country, to hold brokers liable for their negligent performance of responsibilities that

they have agreed to accomplish. The rationale for this legal framework, which the dissent claims is nonexistent, is the core agency principle that an agent is liable only for the specific tasks he undertakes. See id.; see also *Ursini* v. *Goldman*, supra, 118 Conn. 559.[9] As we have explained, the exception may be satisfied in a future case when there is supporting evidence. The plaintiffs in the present case, however, expressly denied ever communicating with the defendants after the procurement of their policy, and they failed to show that the defendants had assisted them with any prior renewal. Accordingly, the plaintiffs failed to show that their case comes within that exception.

Unlike the plaintiffs, the dissent contends that we should not blindly adhere to the traditional agency rule. See part II of the dissenting opinion. We do not abide by our precedent merely because it always has been the law. Rather, for the reasons we have explained, we are persuaded that the creation of a duty beyond our precedent under these circumstances is unwarranted. Moreover, we are not as confident as the dissent that we are up to date on the "changes in" or the "evolution of the insurance industry," or that we understand fully "the gap between ordinary business practices and the law" such that we are ready to modify the common law, as the dissent would have us do in this case. Id. Undermining the argument that a continuous relationship is the industry standard is the fact that the plaintiffs in this case had previously ended their relationship with the defendants and left for a different insurance brokerage firm. A remedy for a broker's negligent performance of acts it did not agree to perform is more appropriately

---

[9] The dissent's proposed legal standard, requiring a broker to make sure that an insured actually receives every notice that a broker has knowledge of—regardless of whether the insured is the broker's client presently, one year ago, or twenty years ago—is not supported by precedent and, at any rate, is untenable.

created by the legislature because, as the dissent accurately notes, "Connecticut heavily regulates and licenses insurance agents. See General Statutes § 38a-702a et seq." Part II of the dissenting opinion.

The judgment of the Appellate Court is affirmed.

In this opinion MULLINS, C. J., and ALEXANDER and DANNEHY, Js., concurred.